J-A08041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WILLIAM M. USCHOCK AND DAVID USCHOCK, CO-EXECUTORS OF THE IRENE G. USCHOCK ESTATE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| KRIEBEL GAS COMPANY AND RANGE RESOURCES APPALACHIA, LLC | |
| Appellee | No. 955 WDA 2013 |

Appeal from the Order May 17, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division at No.: 5618 of 2011

BEFORE:  SHOGAN, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 29, 2014**

William M. Uschock and David Uschock (collectively, "Appellants") appeal the May 17, 2013 order that sustained the preliminary objections of Kriebel Gas Company ("Kriebel") and Range Resources, LLC (collectively, "Appellees"), and dismissed Appellants' complaint with prejudice.  We affirm.

This appeal concerns an oil and gas lease executed between Irene G. Uschock[1] (now deceased) and Kriebel Resources on or about February 12, 2001.  In relevant part, the lease agreement permitted Kriebel Resources to "drill for oil and gas" on 117 acres in Mount Pleasant Township, Westmoreland County, Pennsylvania ("the Property"), that was owned by

_____

[1]    Irene G. Uschock was the wife of William M. Uschock.

Irene G. Uschock and her husband, William M. Uschock. In pertinent part, the lease agreement provided the following with regard to drilling rights:

> 1. Leasing Clause. [Irene G. Uschock] in consideration of One ($1.00) Dollar in hand paid by [Kriebel Resources], receipt of which is hereby acknowledged, grant and convey unto [Kriebel Resources], its heirs, executors, administrators, successors, and assigns, and warrant generally title to, all the oil, gas, surface and Drilling Rights in, on and under [the Property.]
>
> *   *   *
>
> 2. Drilling Rights. In addition, "Property" shall include all oil, gas and surface rights owned or claimed by [Irene G. Uschock] in and under lands which are adjacent, contiguous to or form a part of the lands above described by [Kriebel Resources] is hereby granted the exclusive right of drilling and operating the Property alone or conjointly with neighboring lands for producing oil and gas by any means, and all rights necessary, convenient and incident thereto . . . .

**See** Appellants' Second Amended Complaint, 5/4/2012, Exhibit 2, at 1 ("the Agreement"). The Agreement mandated that Kriebel Resources would pay "a royalty equal to one-eighth part of the oil and gas produced." **Id.**

At some point thereafter, Irene G. Uschock died and the executorship of her estate passed to, amongst others, her husband William M. Uschock ("Husband") and to Richard and David Uschock (collectively, "the Co-Executors"). On August 25, 2011, Husband, in his role as executor of Irene G. Uschock's estate, filed a *pro se* civil complaint against Appellees, who are the successors-in-interest to Kriebel Resource's original lease. **See** Brief for Appellees at 2; **see also** Range Resources Appalachia LLC's Answer and New Matter, 12/7/2012, Exhibit 1, at 1-6 ("Assignment"). Husband's original

- 2 -

complaint was a confusing and intermixed discussion of facts and legal conclusions. The complaint did not contain a factual history, nor did it individually enumerate Husband's causes of action or contain any substantive legal research. In relevant part, Husband sought to recover the drilling rights to the Property, and argued that the Agreement was ambiguous with regard to what materials were to be extracted from the Property, the amount to be extracted, and the methods that were to be used in that extraction. Husband also asserted $1.5 million in damages.

On September 14, 2011, Kriebel filed preliminary objections to Husband's civil complaint, arguing that: (1) Husband had erred by failing to join the other co-executors of Irene G. Uschock's estate; (2) Husband's claims were legally insufficient to establish a right to relief; and (3) Husband had not alleged enough material facts to "establish a breach of the lease, a right to terminate the lease, nor any entitlement to damages." ***See*** Kriebel's Preliminary Objections, 9/14/2011, at 1-8. On December 13, 2011, the trial court entered an order sustaining Kriebel's preliminary objections without prejudice to Husband's right to submit an amended complaint that contained legally and factually sufficient pleadings. The trial court also ordered David and Richard Uschock to be joined as plaintiffs. Order, 12/13/2011, at 1-2.

On December 29, 2011, the Co-Executors filed an amended *pro se* complaint that principally asserted the same causes of action, although there was no longer any specific claim with regard to monetary damages. ***See*** Co-Executors' Amended Complaint, 12/29/2011, at 2-7. This first amended

- 3 -

complaint comprised seven handwritten paragraphs that suffered from the same infirmities as Husband's original complaint. Specifically, the amended complaint did not contain a factual history and, by way of legal authority, contained a single, incomplete citation to a 1983 precedent from the Pennsylvania Supreme Court. *Id.* at 2 (generally citing *U.S. Steel Corp. v. Hoge*, 468 A.2d 1380 (Pa. 1983)). Despite the cursory nature of this filing, the scope of the Co-Executors' claim was fairly clear. In relevant part, the Co-Executors argued that, under *Hoge* and this Court's holding in *Butler v. Charles Powers Estate, et al.*, 29 A.3d 35 (Pa. Super. 2011) ("*Butler I*"), Kriebel did not own the rights to the natural gas contained in the Marcellus Shale on the Property. Rather, the Co-Executors asserted that "whoever owns the shale mineral, owns the gas in it." *Id.* at 3.

On January 18, 2012, Kriebel filed preliminary objections to the Co-Executors' amended complaint. Kriebel, again, objected upon the bases of factual and legal insufficiency. On February 14, 2012, before the trial court had addressed Kriebel's preliminary objections, the Co-Executors submitted a "Revised Amended Complaint" that was significantly longer than the Co-Executors' first amended complaint.[2] Nonetheless, on April 16, 2012, the

_____

[2] On April 17, 2012, the trial court entered an order striking the Co-Executors' "Revised Amended Complaint" for failure to comply with the requirements of Pa.R.C.P. 1033. *See* Pa.R.C.P. 1033 ("A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, . . . or otherwise amend the pleading.").

trial court issued an "Opinion and Order" that sustained Kriebel's preliminary objections due to the Co-Executors' failure to "state the material facts upon which a cause of action is based in a concise and summary form" pursuant to Pa.R.C.P. 1019(a). Order and Opinion, 4/16/2012, at 1-2. The trial court granted Co-Executors leave to file another amended complaint. *Id.* at 2.

On May 4, 2012, Appellants[3] filed a second amended *pro se* complaint. On May 16, 2012, Kriebel filed preliminary objections to Appellants' second amended complaint. In pertinent part, Kriebel argued that Appellants claims for relief were legally insufficient under current Pennsylvania law. On August 9, 2012, the trial court entered an opinion and order that overruled Kriebel's preliminary objections. The trial court acknowledged the unsettled nature of Pennsylvania law "arising from the development of the Marcellus and other shale deposits of natural gas underlying the Commonwealth." Opinion and Order, 8/9/2012, at 1. Specifically, the trial court discussed *Butler I*, stating that our holding was "specifically on point, as it addresses preliminary objections in the nature of a demurrer in a declaratory judgment action seeking a determination of rights to Marcellus Shale [natural] gas." Opinion and Order, 8/9/2012, at 2. However, at the time that the trial court entered its order, the Supreme Court of Pennsylvania had granted allowance

---

[3] For reasons not evident from the certified record or respective submissions, Richard Uschock was not included as a named party plaintiff.

of appeal in *Butler I*, *see Butler v. Powers Estate ex rel. Warren*, 41 A.3d 854 (Pa. 2012), but had not yet issued an opinion:

> As in *Butler I*, [the trial court] cannot say unequivocally that [Appellants] do not have a cognizable claim regarding the nature of the mineral rights in Marcellus Shale and the natural gas contained in it.
>
> > [It remains to be determined whether] (1) Marcellus Shale constitutes a "mineral"; (2) Marcellus Shale gas constitutes the type of conventional natural gas contemplated in *Dunham v. Krikpatrick*, 101 Pa. 36 (Pa. 1882) and *Highland v. Commonwealth*, 161 A.2d 390 (Pa. 1960); and (3) Marcellus Shale is similar to coal to the extent that whoever owns the shale, owns the shale gas."
>
> *Butler I*, 29 A.3d at 43.
>
> *        *        *
>
> As *Butler I* is currently on appeal in the Pennsylvania Supreme Court, [the trial court] will not sustain the within Preliminary Objections in the form of a demurrer under the present state of the law in Pennsylvania.

Opinion and Order, 8/9/2012, at 2 (citations modified; block indent added).

On April 24, 2013, our Supreme Court issued an opinion overruling this Court's holding in *Butler I*. *See generally Butler v. Charles Powers Estate ex rel. Warren*, 65 A.3d 885 (Pa. 2013) ("*Butler II*"). On May 17, 2013, Appellees filed a "Joint Motion for Reconsideration" of Kriebel's preliminary objections to Appellants' second amended complaint. Appellees argued that the Supreme Court's ruling in *Butler II* foreclosed Appellants' claims for relief. That same day, the trial court entered an order sustaining

the preliminary objections and dismissing the second amended complaint with prejudice.

On June 5, 2013, Appellants filed a timely notice of appeal.[4]  On June 10, 2013, the trial court directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On June 17, 2013, Appellants timely complied.  On June 21, 2013, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

It is exceedingly difficult to discern the exact issues that Appellants wish to pursue before this Court.  In lieu of a statement which conforms with our briefing requirements, **see** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."), the Appellants have submitted a page-long paragraph reciting this case's factual history.  Appellants also have included an "Additional Substantive Information in Support of Appeal," which offers further factual information but likewise fails to identify Appellants' claims.

In addition to the irregularity of its Rule 2116 statement, Appellants' brief suffers from numerous other deficiencies under our Rules of Appellate Procedure.  In relevant part, Pa.R.A.P. 2111(a) provides that an appellant's

_____

[4]  Appellants initially attempted to seek direct appeal before the Supreme Court of Pennsylvania.  In a letter dated June 3, 2013, the Supreme Court Prothonotary informed Appellants that their claims are "not among the circumstances in which the Supreme Court has jurisdiction on direct appeal from the court of common pleas.  **See** 42 Pa.C.S. § 722."  Letter, 6/3/2013.

brief should include a: (1) statement of jurisdiction; (2) copy of the order in question; (3) statement of the scope and standard of review; (4) statement of the questions involved; (5) statement of the case; (6) summary of the argument; (7) argument for appellant; (8) a short conclusion; (9) copies of the relevant opinions and pleadings from the trial court; and (10) a copy of the appellant's Rule 1925(b) statement.

Instantly, Appellants have not included a proper statement of jurisdiction, as Appellants' statement does not include "a precise citation to the statutory provision, general rule or other authority believed to confer on the appellate court jurisdiction." **See** Pa.R.A.P. 2114. While Appellants have included a statement that purports to describe this Court's scope and standard of review, **see** Pa.R.A.P. 2111(a)(3), that statement merely lists Appellants' "Reasons for Review or Appeal" and offers no discussion of our relevant standard of review. Appellants' Brief at 3. Most importantly, though, Appellants have not included an argument section in their brief, and, therefore, have failed to abide by the requirements of Pa.R.A.P. 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued . . . followed by such discussion and citation of authorities as are deemed pertinent.") Rather, Appellants have offered only the most cursory of arguments with respect to their position. Discounting the factual morass of the statement of the questions involved,

the entirety of Appellants' substantive discussion of this case is in its

"Statement of the Case,"[5] which reads completely as follows:

> This case involves a breach of development as prescribed in the "term" of the [Agreement], to proceed with "due diligence." Neither the shallow permeable sand conventional gas field, nor the deeper shale rock gas fields[,] have been pursued with "due diligence" as would a prudent operator.
>
> This case also calls into question the recent Pennsylvania Supreme Court decision in [**Butler II**] of April 24, 2013 as to why "stare decisis" does not prevail when applied to the comparison of the [**Hoge**] case precedent. [Appellants] contend that[,] based [up]on "stare decisis[,]" [Appellants] still own the shale rock gas estate regarding unconventional rock gas.

Appellants' Brief at 5.

Even were we to construe the paragraphs reproduced above as comprising Appellants' argument, it is significantly lacking in the substance required by the Pennsylvania Rules of Appellate Procedure. Appellants have failed to recite or apply any relevant standard of review, nor have they offered any discussion of the legal contours specific to issues involving

_____

[5] In relevant part, Pa.R.A.P. 2117 provides that a proper statement of the case shall contain: (1) a statement of the form of action, followed by a brief procedural history of the case; (2) a brief statement of any prior determination of any court or other government unit in the same case; (3) the names of the judges or other officials who determinations are to be reviewed; (4) a closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied upon may be found; and (5) a brief statement of the order under review. **See** Pa.R.A.P. 2117(a). As the above-quoted text indicates, Appellants also have not complied with Rule 2117.

contract interpretation, oil and gas leases, or Marcellus Shale. Although Appellants have invoked **Butler II** and **Hoge**, their reference to those precedents is cursory, at best. Appellants baldly state that they believe that **Hoge** should invalidate **Butler II**.[6] Beyond invoking the axiomatic principle of *stare decisis*, Appellants have not explained **why** the holding in **Hoge** allegedly invalidates the High Court's recent holding in **Butler II** through legal analysis and citations to pertinent authorities.

This Court has described the proper format of an appellate brief, with specific reference to the argument section and waiver, as follows:

> In an appellate brief, parties must provide an argument as to each question, which should include a discussion and citation of pertinent authorities. Pa.R.A.P. 2119(a). This Court is neither obliged, nor even particularly equipped, to develop an argument for a party. **Commonwealth v. Williams**, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). To do so places the Court in the conflicting roles of advocate and neutral arbiter. **Id.** When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. **Commonwealth v. Luktisch**, 680 A.2d 877, 879 (Pa. Super. 1996).

**In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) (quoting **Commonwealth v. B.D.G.**, 959 A.2d 362, 371-72 (Pa. Super. 2008)) (citations modified). "Moreover, 'mere issue spotting without analysis or

---

[6] Similarly, Appellants baldly contend in their statement of the questions that "[w]e understand that Pennsylvania has covenants and rules to develop gas fields. . . subject to severing a gas lease if the gas field is not exploited with due diligence." Appellants' Brief at 4. Appellants have declined to share their "understanding" with this Court by referencing, and discussing, the "rules and covenants" that allegedly support this assertion.

legal citation to support an assertion precludes our appellate review of a matter.'" ***Id.*** (quoting ***In re J.B.***, 39 A.3d 421, 437 (Pa. Super. 2012)).

Consequently, we conclude that Appellants have waived their appellate claims pursuant to Rule 2119(a). Although Appellants have flagged various potential issues, they have not supported those claims with any kind of discussion that approaches meaningful legal research or citation. ***See*** Pa.R.A.P. 2119(a). Furthermore, Appellants' refusal to comply with our briefing dictates under the Pennsylvania Rules of Appellate Procedure has substantially impeded our ability to accurately identify, and adjudicate, the issues in this case. ***See*** Pa.R.A.P. 2101 ("Briefs . . . shall conform in all material aspects with the requirements of these rules as nearly as the circumstances of the particular case will admit, . . . and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

Thus, Appellants have waived any claims that they sought to raise before this Court under Rules 2119(a) and 2101.[7]

_____

[7] Assuming, *arguendo*, that Appellants' brief had complied with our Rules of Appellate Procedure, their claim involving ***Hoge*** and ***Butler II*** is without merit. In ***Hoge***, the Pennsylvania Supreme Court held as follows regarding the ownership of "coal bed gas":

> Gas is a mineral, though not commonly spoken of as such, and while in place it is part of the property in which it is contained, as is the case with other minerals within the bounds of a freehold estate.

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014

---

*(Footnote Continued)* ─────────────

\*     \*     \*

> [A]s a general rule, subterranean gas is owned by whoever has title to the property in which the gas is resting. . . . In accordance with the . . . principles governing gas ownership, therefore, *such gas as is present in coal must necessarily belong to the owner of the coal*, so long as it remains within his property and subject to his exclusive dominion and control.

468 A.2d at 1383 (italics in original). The precise nature of Appellants' claim that relies upon **Hoge** is unclear due to the state of Appellants' filings before this Court. We discern that Appellants are arguing that Appellants retain the rights to the Marcellus Shale natural gas on the Property because (1) Marcellus Shale natural gas allegedly is considered a "mineral" under **Hoge**; and (2) therefore, Appellees do not own the rights to the Marcellus Shale natural gas on the Property because the Agreement did not contemplate mineral rights. However, in **Butler II**, our Supreme Court specifically declined to extend the **Hoge** holding to include Marcellus Shale natural gas: "We therefore find no merit in any contention that because Marcellus [S]hale natural gas is contained within shale rock, regardless of whether shale rock is or is not []a mineral, such consequentially renders the natural gas therein a mineral." 65 A.3d at 899 (citing **Hoge**, 468 A.2d at 1383).

- 12 -